The trial court granted summary judgment in favor of all defendants on all counts stated in the complaint. The plaintiffs appeal. We reverse and remand.
Viewing the evidence most favorably to the non-moving party, which we must do in reviewing the trial court's order granting summary judgment, we find that the plaintiffs have established jury issues which compel a reversal.
Otto Schoen and his wife Clara purchased 320 acres of land in 1979. Otto Schoen approached Robert Gulledge, the record title holder, with regard to the land sometime in 1978. Gulledge quoted Schoen a price of $1,500 per acre and advised Schoen to allow him a few days to let Gulledge talk to Weldon Payne, president of the Federal Land Bank Association of Robertsdale (FLBA), about lending Schoen *Page 1096 
the purchase money. Thereafter, Schoen contacted Payne, who, according to Schoen, miscalculated, allegedly deliberately, the cash flow needed by Schoen to sustain a loan of $650,000. (Schoen had a prior loan which was consolidated, making a total of $650,000.)
Schoen produced a witness, Payne's successor as president of FLBA, who testified as an expert that the loan to Schoen should not have been made, that the amount of interest, which was critical in determining whether there was sufficient cash flow to sustain the loan, was an objective figure available to Payne, who approved the loan. This witness also testified that the Federal Land Bank of New Orleans (now of Jackson) could have determined that Schoen's cash flow was insufficient based upon the figures submitted to it by Payne.
Lloyd Taylor acted as the attorney for FLBA and was the loan closing attorney on the loan. The loan was closed on January 3, 1979. The terms of the loan called for annual payments of $57,448.40 over a period of forty years. Schoen was unable to pay the first installment, which came due in January 1980. He subsequently sold half of the acreage and reduced the principal by $180,000. He could not pay the annual payment due in January 1981, and the FLBA foreclosed on the loan.
In September 1982, Gulledge, Payne, and Taylor were indicted by a federal grand jury in the United States District Court for the Southern District of Alabama. They were charged with, among other things, conspiracy and obtaining unlawfully money from the Federal Land Bank Association of Robertsdale and the Federal Land Bank of New Orleans. Gulledge and Taylor were charged with aiding and abetting Payne to obtain unlawfully monies from FLBA and the Federal Land Bank of New Orleans. Gulledge was charged with making false statements in a loan application submitted to FLBA. The indictment referring to unlawfully obtaining monies involved the proceeds derived from the sale of the 320 acres to Schoen.
It was established during the federal prosecution that Payne, at the time he handled the loan application with Schoen, owned a one-half interest in the land and, unknown to Schoen, split the purchase price with Gulledge. Payne's interest in the property was in violation of the conflict of interest rules of the FLBA. He was ultimately convicted, as was Taylor. The federal judge granted Gulledge's motion for acquittal as to one count; and the jury was unable to reach a verdict on two others, and a mistrial was ordered.
The Schoens' complaint was filed in August 1983. They allege that they were the victims of a fraud scheme perpetrated by the defendants, who conspired to induce them to incur a loan beyond their means to service and did so by fraudulently calculating their cash flow in order to insure that the loan would be approved. They also alleged claims for breach of contract, bad faith, outrage, etc.
The record in this case runs to over 5,000 pages, consisting of affidavits, depositions of various parties and witnesses, and the record in the criminal case in the federal court. Yet the trial court granted summary judgment in favor of all defendants as to all claims. The trial court cannot shift to this Court its responsibility to determine the triable issues in a complex case by granting pre-trial motions for summary judgment. Because we hold that genuine issues of fact exist as to the fraud and conspiracy claims, we reverse the judgment appealed from and express no opinion with regard to other claims.
The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. NationwideLife Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge HoldingCo. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., *Page 1097 388 So.2d 533 (Ala. 1980). The movants here have not met that burden as to the conspiracy and fraud claims, and it was reversible error to grant their motions.
Each argues on appeal that summary judgment was appropriate because the complaint shows on its face that the fraud claims are barred by the statute of limitations. This argument is without merit. It is true that, at the time of the events pertinent to this case, fraud actions were governed by a one-year statute of limitations, § 6-2-39 (a)(5), Code of Ala. 1975.[1] However, at the time this suit arose, § 6-2-3 provided:
 "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his action."[2]
In this case, the Schoens testified that they had no reason to believe they had been victims of a fraudulent scheme involving the 320 acres until they saw newspaper accounts of the criminal indictment of Gulledge, Payne, and Taylor. This creates a fact issue which, if believed by the jury, would bring them within the saving clause of this statute. Their testimony in this regard, as in any other, is subject to belief by the jury, but it creates a genuine issue of material fact as to when they discovered, or should have discovered, the alleged fraud. That is all one is required to do to prevent summary judgment. Sims v. Lewis, 374 So.2d 298 (Ala. 1979); Ryan v.Charles Townsend Ford, Inc., 409 So.2d 784 (Ala. 1981).
The complaint alleges that the defendants, acting in concert, conspired to defraud the plaintiffs in connection with the purchase of the land involved. Three of these defendants were criminally indicted, and two were convicted of an offense against the United States arising out of the same transaction. Gulledge's contention that, by the federal judge's having granted his motion for acquittal on the criminal charge, he is absolved of civil liability in this case, is without merit. The burden of proof on the government in a criminal case is different from, and greater than, that of the plaintiff in a civil case.
Payne's assertion that he owed no duty to Schoen in the loan transaction is equally groundless. As the owner of a one-half interest in the property, it was to his personal benefit to see that the loan was approved. As an officer of the lender, it was his duty to recommend only sound loans. The conflict of interest is obvious. The fact that he may also have defrauded the Federal Land Bank of New Orleans and his employer, FLBA, does not lessen his duty to his borrower to deal fairly. Apparently, a borrower was essential to the alleged scheme to defraud, and a jury may find a breach of duty to each. FirstFederal Savings Loan Association of Hamilton v. Caudle,425 So.2d 1050 (Ala. 1982); Johnson v. United States Dept. ofAgriculture, 734 F.2d 774 (11th Cir. 1984).
The plaintiffs have alleged that FLBA and Federal Land Bank of New Orleans (now Jackson) were parties to the conspiracy. Both are entities created pursuant to the Farm Credit Act.12 U.S.C. § 2001 (a) (1971). The policy prompting the enactment of that legislation is expressed thusly:
 "It is declared to be the policy of the Congress . . . that the farmer-owned cooperative Farm Credit System be designed to accomplish the objective of improving the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit and closely related services to *Page 1098 
them, their cooperatives, and to selected farm-related businesses necessary for efficient farm operations."
12 U.S.C. § 2001 (a) (1971).
Whether the plaintiffs can prove that these institutions breached a duty to them we cannot say. They produced a witness who testified that the loan should not have been made, based upon the information available at the time it was made. This witness also testified that the Federal Land Bank of New Orleans (now Jackson) could have determined that the Schoens' cash flow would not allow them to service the loan. We are unimpressed with the argument of these defendants to the effect that Schoen simply borrowed more money than he could repay. Their argument would say that only the borrower dictates the size of a loan. Common experience teaches otherwise.
Additionally, the plaintiffs requested the court, pursuant to Rule 56 (f), A.R.Civ.P., to continue the various defendants' motions for summary judgment pending further discovery. Depositions of the board of directors of the Federal Land Bank of Jackson were scheduled for October 19, 1984. Although the defendants did not object to a continuance, as indicated by the record, the trial judge insisted on hearing the motions for summary judgment on October 18, 1984, and granted each of them.
We hold that the trial court erred in granting summary judgment in favor of all defendants. We address only the error with regard to the conspiracy and fraud claims.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES and SHORES, JJ., concur.
[1] Section 6-2-39, Code 1975, was repealed by Act 85-39, Second Spec. Session 1984-85, effective January 9, 1985. Those causes of action listed under that one-year statute were transferred by Act 85-39 to § 6-2-38, the two-year statute.
[2] Section 6-2-3, Code 1975, was amended by Act 85-39, effective January 9, 1985, to change the one-year "saving clause" to a two-year clause.