KENNEDY, Justice.
Martin Pomerantz and Quad Cities Nissan, Inc. (“Quad Cities”), filed an action against G. Olen Green and Shoals Nissan, Inc., predecessor to G. Group, Inc., alleging fraud and misrepresentation. The trial court entered a summary judgment for the defendants on all six counts of the complaint, and Pomerantz and Quad Cities appeal.
The standard used to determine the propriety of a summary judgment is found in Rule 56(c), A.R.Civ.P.:
“The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
The burdens placed on the parties by this rule have often been described:
*827 “The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So.2d 601 (Ala.1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980).”
Schoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala.1985).
In determining whether there was substantial evidence to defeat a summary judgment motion (see § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989)), this Court reviews the evidence in the light most favorable to the nonmovant and resolves all reasonable doubts against the movant. Stephens v. City of Montgomery, 575 So.2d 1095 (Ala.1991).
Pomerantz is the majority shareholder in Quad Cities; Green is the majority shareholder in G. Group, Inc., which contains the assets of Shoals Nissan except for those assets sold by Shoals Nissan to Pomerantz and Quad Cities. In May 1989, Pomerantz and his son Martin Pomerantz, Jr., negotiated with Green to purchase Shoals Nissan’s automobile business, which included the real estate on which the business operated by Shoals Nissan was located, the building, the repair shop, the parts, the furniture, the fixtures, and most of its automobiles. During the course of negotiations for the purchase, Green provided Pomerantz a financial statement concerning Shoals Nissan’s automobile business; Quad Cities alleges that Green fraudulently misrepresented the profitability of that automobile business in that financial statement.
To prove his prima facie case that there existed no genuine issue of material fact, Green offered evidence that tended to indicate that he told Pomerantz and Pomer-antz, Jr., who also negotiated in Quad Cities’ behalf, that the financial statement was “not accurate”; that Pomerantz and Pomerantz, Jr., were sophisticated businessmen who could not have justifiably relied on the financial statement; and that the transaction was not dependent upon Quad Cities and Pomerantz’s receiving the financial statement. We do not determine whether Green proved his prima facie case; for the purpose of discussion only, we assume that he did, and we review the evidence presented by the plaintiffs in opposition to the summary judgment motion.
[[Image here]]
The evidence indicates that during the negotiations Pomerantz and Pomerantz, Jr., both insisted that Green provide a financial statement and that they told Green that they would not buy the business if they did not receive one. The financial statement that Green gave the Pomer-antzes was partially handwritten and it purported to represent the operations of the automobile business from January 1, 1989, through April 30, 1989. Concerning that financial statement, Pomerantz, Jr., in deposition, testified in response to questions by Green as follows:
“Q. Well, didn’t he tell you, ‘I’ll give you one, but you can’t go by all these figures. What I go by is the bottom line’?
“A. No, because I would have walked out on the deal at that point in time.
“Q. You’d have just got up and left? Is that what you’re saying?
“A. Absolutely.
“Q. All right. Now—
“A. What he did tell me was, the profit is not necessarily reflected on the bottom line because they were getting perks out in other ways, so that in actuality the dealership should have been making more money than it showed.
“Q. So what he told you was that this financial statement did not accurately reflect what they did out there? Didn’t he tell you that?
“A. Right. He said it did not accurately reflect the real profit of the dealership, that it was greater.
*828 “Q. And did he also tell you that it did not accurately reflect the real sales figures of the corporation?
“A. No.
“Q. He didn’t tell you that?
“A. No.
“Q. Did he tell you that it didn’t accurately reflect the real parts and services and so forth that was done?
“A. Absolutely not.”
The evidence further indicates that after receiving the financial statement, Pomer-antz, Pomerantz, Jr., and an associate of theirs who had years of experience in the automobile business took the figures for both the sales of parts and the servicing of automobiles and performed a complicated series of calculations to determine whether the automobile business would be profitable; that during that analysis Pomerantz and Pomerantz, Jr., contacted Green with questions about items on the financial statement; and that a financial statement is an integral part of the purchase of any automobile dealership.
Quad Cities and Pomerantz bought the automobile business for $1,300,000. The record indicates that some months after the sale, Pomerantz acquired a copy of a confidential operating analysis (“COA”) of the automobile business from a Nissan representative. The COA is a compilation of operations information that every Nissan dealer transmits monthly by computer to Nissan Corporation of America. The COA in this case addressed the four-month period from January 1, 1989, through April 30, 1989, and showed the income of the automobile business from the sales of parts and accessories and the income generated by the service department. The COA, for the same four-month period covered by the financial statement given by Green to Quad Cities and Pomerantz, reflected $68,964 less income for the parts department than the financial statement showed (a 31% difference), and $55,692 less income for the service department (a 47% difference).
Pomerantz, Jr., testified that Nissan would not provide those records before the sale, that Nissan would not give any information to a prospective buyer of an automobile business until Nissan itself had approved the buyer, and that Nissan would literally not have “even a conversation with us until they [had] a buy-sell agreement and a letter of intent from Mr. Green saying that [he was] going to sell to us.”
Green testified that he had his bookkeeper send in a monthly report to Nissan by computer and that he used the form of that report to maintain his own separate records of the automobile business. He said, “I didn’t report everything to Nissan. I reported what I wanted Nissan to have”; and he said that “most” of the information he reported monthly to Nissan was not accurate and that he made inaccurate reports because he did not “trust the new regime at Nissan.”
The plaintiffs’ complaint contained a common law count alleging “intentional” fraud, “reckless” fraud, and “mistaken” fraud, as well as a count alleging misrepresentation (§ 6-5-101); suppression of material facts (§ 6-5-102); and deceit (§§ 6-5-103 and -104). We will not unnecessarily extend this opinion by discussing how Quad Cities and Pomerantz proved each element of each claim. However, for a discussion of common law and statutory fraud, see Baker v. State Farm General Insurance Co., 585 So.2d 804 (Ala.1991). Our review of the record and our discussion in this opinion of the evidence indicate that the plaintiffs countered the defendants’ showing on the summary judgment motion with substantial evidence in support of each claim and, even assuming that the defendants made a prima facie showing that there were no genuine issues of material fact, we conclude that the plaintiffs’ evidence in opposition shows that there are genuine issues of material fact for a jury to determine.
The summary judgment was improper. That judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.