SEE, Justice.
 

 Flying J Fish Farm, Charles Jay, and Charles’s mother Anne Jay (hereinafter referred to collectively as “the Jays”) and Renee Laurie Jay (“Renee”), Charles’s wife, appeal from a summary judgment in favor of Peoples Bank of Greensboro (“Peoples Bank”), its directors, Wynne Coleman, and C. Reid Lawson, Jr. (hereinafter referred to collectively as “the Peoples Bank defendants”), on the Jays’ claims of breach of fiduciary duty, suppression, deceit, unjust enrichment, and conspiracy and on Renee’s claim of loss of consortium (case no. 1061833). The Jays and Renee also appeal from a summary judgment in favor of Alabama Catfish, Inc., d/b/a Harvest Select (“Alabama Catfish”), on all of their claims against it (case no. 1070140). The Peoples Bank defendants cross-appeal, pursuant to Rule 5, Ala. R.App. P., from the trial court’s denial of their motion for a summary judgment on the Jays’ negligence and/or wantonness and negligent- and/or wanton-supervision claims (case no. 1070120). We affirm in case no. 1061833 and case no. 1070140, and we reverse and remand in case no. 1070120.
 

 Facts and Procedural History
 

 The Jays entered the catfish-farming business around 1994. At that time Charles Jay met with Wynne Coleman, a loan officer at Peoples Bank, to secure financing for the business venture, which was named the Flying J Fish Farm. Coleman initially refused to provide financing for the venture because Charles could not offer collateral to guarantee the loan. Charles returned to the bank with Anne, and, based on her personal guarantee, Coleman agreed to provide financing for the Flying J Fish Farm. Coleman renewed and modified the loan each year in order to finance the continuing operations and the expansion of the Flying J Fish Farm, until his retirement in 1998. Upon Coleman’s retirement, C. Reid Lawson, Jr., took over as the Jays’ loan officer at
 
 *1189
 
 Peoples Bank, and he continued to renew and to modify the Jays’ loan until the Jays left the catfish-farming business in 2003. By that time, the Jays owed Peoples Bank $640,000. Anne Jay sold some timberland to satisfy her personal guarantee of the loan.
 

 Coleman, and later Lawson, had met with the Jays each year while they were operating the Flying J Fish Farm to discuss their loan. Based on his own experience in the catfish-farming business, Lawson offered suggestions to the Jays on ways they could improve the operation and financial condition of their catfish farm.
 

 Alabama Catfish is one of two main catfish-processing businesses located in the area in which the Flying J Fish Farm operated; the other is Southern Pride Fish, LLC. Alabama Catfish and Southern Pride employ tasters who determine whether catfish are “on flavor” or “off flavor” at the time of harvest. The processors will refuse to accept catfish that they determine are “off flavor” and that, therefore, cannot be sold to customers. All catfish farmers have periodic issues with “off flavor” fish.
 

 Coleman and Lawson were both shareholders in Alabama Catfish while they were acting as the Jays’ loan officer, but they did not disclose that fact to the Jays. Charles regularly offered to sell his fish to Alabama Catfish, and Lawson encouraged him to do so. Charles did not have a contract with either Alabama Catfish or with Southern Pride. He initially focused his catfish-selling efforts on Alabama Catfish, partly based on Lawson’s advice and experience. The Jays’ catfish were often refused by Alabama Catfish as being “off flavor.”
 

 In 1999, Alabama Catfish began building catfish ponds of its own, with the goal of providing all the catfish for the processing plant from its own ponds or the ponds of its shareholders. This action, combined with a declining market, prompted Charles to shift the focus of his sales efforts to Southern Pride. He experienced difficulties similar to those he had experienced in trying to sell his catfish to Alabama Catfish. In January 1999, George Smelley, president of Alabama Catfish, sent a letter to the catfish farmers with whom it did business informing them that he, along with Paul Bryant and Lawson, had purchased Alabama Catfish. The Jays deny that they received the letter; however, they rely on the information in that letter to support their allegation that Alabama Catfish suppressed material information regarding its decision to increase the proportion of catfish raised by Alabama Catfish supplying its processing plant.
 

 The Jays sued the Peoples Bank defendants and Alabama Catfish in the Hale Circuit Court, alleging, in their complaint as finally amended, (1) that Peoples Bank, Lawson, and Alabama Catfish had breached a fiduciary duty, (2) that the Peoples Bank defendants and Alabama Catfish, in violation of § 6-5-102, Ala.Code 1975, had suppressed material facts, (3) that Lawson, Peoples Bank, its directors, and Alabama Catfish, in violation of § 6-5-103, Ala.Code 1975, had deceived the Jays regarding material facts, (4) that the Peoples Bank defendants and Alabama Catfish were unjustly enriched at the Jays’ expense, (5) that the Peoples Bank defendants and Alabama Catfish were negligent and/or wanton in their dealings with the Jays, (6) that Peoples Bank and its directors had negligently and/or wantonly supervised Lawson, (7) that the Peoples Bank defendants and Alabama Catfish conspired to commit the aforementioned tortious acts, and (8) that, as a result of the actions of the Peoples Bank defendants and Alabama Catfish, Renee had suffered a loss of Charles’s consortium. The Peoples Bank
 
 *1190
 
 defendants and Alabama Catfish each moved for a summary judgment on all the Jays’ claims and Renee’s loss-of-consortium claim. The trial court entered a summary judgment for Alabama Catfish on all claims and, in a separate order, for the Peoples Bank defendants on all claims except for the claims alleging negligence and/or wantonness and negligent and/or wanton supervision. This Court consolidated the Jays’ and Renee’s appeals of the trial court’s summary judgments with the permissive cross-appeal filed by the Peoples Bank defendants of the order denying summary judgment on the Jays’ negligence and/or wantonness and negligent- and/or wanton-supervision claims for the purpose of writing one opinion.
 

 Issues
 

 The issues presented are whether the trial court erred in entering a summary judgment in favor of the Peoples Bank defendants on the Jays’ breach-of-fiduciary-duty, suppression, deceit, unjust-enrichment, and conspiracy claims and on Renee’s loss-of-consortium claim; whether the trial court erred in entering a summary judgment in favor of Alabama Catfish on all the Jays’ claims and on Renee’s loss-of-consortium claim; and whether the trial court erred in denying the motion for a summary judgment filed by the Peoples Bank defendants on the Jays’ negligence and/or wantonness and negligent- and/or wanton-supervision claims.
 

 Standard of Review
 

 “ ‘ “On appeal, this Court reviews a summary judgment de novo.”
 
 DiBiasi v. Joe Wheeler Elec. Membership Corp.,
 
 988 So.2d 454, 459 (Ala.2008) (citing
 
 Ex parte Essary,
 
 992 So.2d 5, 8 (Ala.2007)). In order to uphold a summary judgment, we must determine that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c)(3), Ala. R. Civ. P. “When the movant makes a prima facie showing that those two conditions have been satisfied, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact.”
 
 Blue Cross & Blue Shield of Alabama v. Hodurski,
 
 899 So.2d 949, 952 (Ala.2004). Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989);
 
 see also
 
 § 12-21-12(d), Ala.Code 1975. In reviewing a summary judgment, we must view the evidence in the light most favorable to the nonmovant.
 
 Johnny Ray Sports, Inc. v. Wachovia Bank,
 
 982 So.2d 1067, 1071 (Ala.2007). “Finally, this Court does not afford any presumption of correctness to the trial court’s ruling on questions of law or its conclusion as to the appropriate legal standard to be applied.”
 
 DiBiasi,
 
 988 So.2d at 459.’
 

 “Catrett v. Baldwin County Elec. Membership Corp.,
 
 996 So.2d 196, 199 (Ala.2008).”
 

 Moon v. Pillion,
 
 2 So.3d 842, 845 (Ala.2008).
 

 Analysis
 

 I. Breach of Fiduciary Duty
 

 The Jays allege that the trial court erred in entering a summary judgment in favor of Peoples Bank, Lawson, and Alabama Catfish on the Jays’ breach-of-fiduciary-duty claim.
 

 “Courts have traditionally viewed the relationship between a bank and its cus
 
 *1191
 
 tomer as a creditor-debtor relationship that does not impose a fiduciary duty on the bank.
 
 See Power Equipment Co. v. First Alabama Bank,
 
 585 So.2d 1291 (Ala.1991);
 
 Faith, Hope & Love, Inc. v. First Alabama Bank of Talladega County, N.A.,
 
 496 So.2d 708 (Ala.1986). However, a fiduciary duty may arise when the customer reposes trust in the bank and relies on the bank for financial advice, or in other special circumstances.
 
 Bank of Red Bay v. King,
 
 482 So.2d 274 (Ala.1985);
 
 Baylor v. Jordan,
 
 445 So.2d 254 (Ala.1984).”
 

 K & C Dev. Corp. v. AmSouth Bank,
 
 597 So.2d 671, 675 (Ala.1992). Advice alone, however, is not enough to impose a fiduciary duty. Even where the bank has taken an active role in attempting to improve a debtor company’s financial position, this Court has not found a fiduciary relationship.
 
 See Nettles v. First Nat'l Bank of Birmingham,
 
 388 So.2d 916, 920 (Ala.1980) (holding that no fiduciary relationship existed where bank “caused various documents to be prepared, made additional secured loans, and kept close tabs on the Company’s operation. Notwithstanding this active role, the essential relationship between the parties remained that of debt- or-creditor, and the parties dealt with each other at arm’s length.”).
 

 Lawson, based on his extensive experience in the catfish-farming business, offered the Jays advice on how to improve the operation of their catfish farm, advice the Jays were free to disregard. The Jays cite Lawson’s “superior knowledge” in the catfish industry as a basis for the formation of a fiduciary duty. However, the fact that the Jays respected Lawson’s opinion and accepted his advice does not supply the basis for the formation of a fiduciary relationship between the Jays and Lawson or Peoples Bank.
 
 See Nettles,
 
 388 So.2d at 921 (“[T]he fact that appellant ... repose[d] great confidence in appellees’ ability to save his business and that he acquiesced in their recommendations, ultimately to his financial detriment, does not serve to establish some special fiduciary relationship .... ”).
 

 The Jays also allege that Lawson exerted an “overmastering influence” over the Jays, but they do not offer facts that support this assertion. Anne Jay testified that Lawson urged her and Charles to expand their catfish farm “year after year,” yet the record shows that the Jays added their last pond in 1999, shortly after Lawson took over as their loan officer. The Jays also allege that Lawson exerted an “overmastering influence” by advising them to focus their sales efforts on Alabama Catfish, and not on Southern Pride. However, in late 2000, the Jays began to focus their sales efforts on Southern Pride.
 

 The Jays did not present substantial evidence indicating that they had a fiduciary relationship with Peoples Bank or Lawson; therefore, we affirm the summary judgment in favor of Peoples Bank and Lawson on this claim.
 

 The Jays also allege a breach of fiduciary duty on the part of Alabama Catfish. The Jays allege that because Lawson was a director of Alabama Catfish, his actions as a loan officer for Peoples Bank not only created a fiduciary duty on the part of Peoples Bank, but also extended that duty to Alabama Catfish. For the same reasons that we hold that Lawson’s actions did not create a fiduciary relationship with Peoples Bank, we also conclude that there was no fiduciary relationship between the Jays and Alabama Catfish. Therefore, we affirm the summary judgment in favor of Alabama Catfish on this claim.
 

 II. Suppression and Deceit
 

 The Jays allege that the trial court erred in entering a summary judg
 
 *1192
 
 ment in favor of the Peoples Bank defendants and Alabama Catfish on the Jays’ suppression and deceit claims.
 
 [1]
 

 “In order to establish a cause of action for fraudulent suppression, the plaintiff must show 1) that the defendant had a duty to disclose material facts, 2) that the defendant concealed or failed to disclose those facts, 3) that the concealment or failure to disclose induced the plaintiff to act; and 4) that the defendant’s action resulted in harm to the plaintiff.
 
 Interstate Truck Leasing, Inc. v. Bender,
 
 608 So.2d 716 (Ala.1992). A duty to communicate can arise from a confidential relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information, but mere silence in the absence of a duty to disclose is not fraudulent.
 
 Dodd v. Nelda Stephenson Chevrolet, Inc.,
 
 626 So.2d 1288 (Ala.1993);
 
 Hardy v. Blue Cross & Blue Shield of Alabama,
 
 585 So.2d 29 (Ala.1991);
 
 King v. National Foundation Life Ins. Co.,
 
 541 So.2d 502 (Ala.1989);
 
 [s]ee, McGowan v. Chrysler Corp.,
 
 631 So.2d 842 (Ala.1993); Ala.Code 1975, § 6-5-102.”
 

 Jewell v. Seaboard Indus., Inc.,
 
 667 So.2d 653, 658 (Ala.1995).
 

 The Jays argue that “[t]he question as to whether a duty to disclose exists is for the jury,” citing
 
 Liberty National Life Insurance Co. v. McAllister,
 
 675 So.2d 1292, 1296 (Ala.1995). However, as we explained in
 
 State Farm Fire & Casualty Co. v. Owen,
 
 729 So.2d 834, 840 (Ala.1998):
 

 “The judge should decide whether, assuming as truth all of the plaintiffs factual assertions, they are sufficient to give rise to a legal duty. If, even presuming that all of the plaintiffs facts are true, the judge determines that, as a matter of law, no duty was owed, then a summary judgment ... is appropriate.”
 

 The Jays allege that the Peoples Bank defendants and Alabama Catfish had superior knowledge, i.e., they knew Coleman and Lawson were both loan officers at Peoples Bank and principals in Alabama Catfish, and they note that this Court has stated: “[W]hen one party has superior knowledge of a fact that is unknown to the other party, and the lack of knowledge will induce the other party to act in a manner in which he otherwise might not act, the obligation to disclose is ‘particularly compelling.’”
 
 McAllister,
 
 675 So.2d at 1296 (citing
 
 Baker v. Bennett,
 
 603 So.2d 928, 935 (Ala.1992)). However, “ ‘[sjuperior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information.’ ”
 
 Stale Farm Fire & Cas. Co.,
 
 729 So.2d at 843 (quoting
 
 Surrett v. TIG Premier Ins. Co.,
 
 869 F.Supp. 919, 925 (M.D.Ala.1994)).
 

 The Jays allege that the “existence of confidential and fiduciary relations and special circumstances” gave rise to a duty to disclose. They also allege that “under the law of Alabama” Coleman and Lawson, because of their superior knowledge of material facts under “all the circumstances,” were required to disclose to the Jays certain facts regarding Coleman and Lawson’s relationship with Alabama Catfish. However, the Jays do not support their allegations with citations to caselaw or to other authority. “ ‘Where an appellant fails to cite an authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant.’ ”
 
 Henderson v. Alabama A & M Univ.,
 
 483 So.2d 392, 392 (Ala.1986) (quoting
 
 Gibson v. Nix,
 
 460 So.2d 1346,
 
 *1193
 
 1347 (Ala.Civ.App.1984)). Moreover, we have already held that Peoples Bank, Lawson, and Alabama Catfish were not involved in a fiduciary relationship with the Jays. Therefore, the Jays did not present substantial evidence indicating that the Peoples Bank defendants or Alabama Catfish was under any duty to disclose material facts, and we affirm the summary judgment on these claims.
 
 [2]
 

 III. Unjust Enrichment
 

 The Jays allege that the trial court erred in entering a summary judgment in favor of the Peoples Bank defendants and Alabama Catfish on the Jays’ unjust-enrichment claim. To succeed on a claim of unjust enrichment, the plaintiff must show that
 

 “ ‘the “ ‘defendant holds money which,
 
 in equity and good conscience,
 
 belongs to the plaintiff or holds money which was improperly paid to defendant because of
 
 mistake or fraud.’” Dickinson v. Cosmos Broad. Co.,
 
 782 So.2d 260, 266 (Ala.2000) (quoting
 
 Hancoclo-Hazlett Gen. Constr. Co. v. Trane Co.,
 
 499 So.2d 1385, 1387 (Ala.1986)).... “The doctrine of unjust enrichment is an old
 
 equitable
 
 remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another.”
 
 Battles v. Atchison,
 
 545 So.2d 814, 815 (Ala.Civ.App.1989).’ ”
 

 Mantiply v. Mantiply,
 
 951 So.2d 638, 654 (Ala.2006) (quoting
 
 Avis Rent A Car Sys., Inc. v. Heilman,
 
 876 So.2d 1111, 1123 (Ala. 2003)).
 

 The Jays base their unjust-enrichment claim on unspecified “legal arguments and references to the record that are contained in the other sections of this brief.” Jays’ brief, p. 73. Because we hold that the trial court properly entered a summary judgment in favor of the Peoples Bank defendants and Alabama Catfish on the Jays’ breach-of-fidueiary-duty, suppression, and deceit claims, the Jays cannot show that they paid any moneys to Peoples Bank or to Alabama Catfish because of mistake or fraud, and their claim of unjust enrichment is without merit. Therefore, we affirm the summary judgment for the Peoples Bank defendants and Alabama Catfish on this claim.
 

 IV. Negligence and/or Wantonness
 

 The Peoples Bank defendants allege that the trial court erred in not entering a summary judgment in their favor on the Jays’ negligence and/or wantonness claim. In its order certifying its ruling on this issue as appropriate for permissive appeal under Rule 5, Ala. R.App. P., the trial court stated the controlling question of law as follows:
 

 “Whether [the Peoples Bank defendants] can be liable to the Bank’s customers for negligence or wantonness on the theory that the Bank loaned those customers money for use in their business when both the Bank and those customers appreciated that there was a substantial risk that revenues from the business would not be sufficient to repay the loans.”
 

 This appears to be a question of first impression for this Court. We agree with the courts in other jurisdictions that have answered this question in the negative as to negligence.
 
 See FDIC v. Fordham (In re Fordham),
 
 130 B.R. 632, 646 (Bankr.D.Mass.1991) (“A lender, moreover, owes to its borrower or guarantor no duty to use reasonable care to determine that a
 
 *1194
 
 project is sufficiently feasible to permit repayment of the loan.”);
 
 see also Commercial Nat’l Bank in Shreveport v. Audubon Meadow P’ship,
 
 566 So.2d 1136, 1140 (La.Ct.App.1990) (“To impose such requirements would significantly alter the relationship between banks and those with whom they deal. In effect, it would impose liability upon banks for business failures arising through ventures they financed.”);
 
 Wagner v. Benson,
 
 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516, 521 (1980) (“[T]he Wagners allege they suffered substantial foreseeable harm from the Bank’s negligence in loaning money to them, as inexperienced investors, for a risky venture over which the Bank exercised influence and control. However, the Bank owes no duty of care to the Wagners in approving their loan.”). The Jays made the decision to start a catfish-farming business; they applied for and received a loan with the anticipation that they stood to profit if the business succeeded and that they could be exposed to economic loss should the business fail. The Peoples Bank defendants should not now be made insurers of their business decisions.
 
 See Gries v. First Wisconsin Nat’l Bank of Milwaukee,
 
 82 Wisc.2d 774, 780, 264 N.W.2d 254, 257 (1978) (“[The plaintiffs] called the bank; they prepared a proposal; they applied for the loan; they invested the money in the business. Although the failure of the business is unfortunate for both the plaintiffs and the bank, it was a risk which the plaintiffs assumed, and which can not be shifted to the bank.”).
 

 The Jays cite two cases in which this Court has held a bank liable under a negligence theory; however, both cases are distinguishable. In
 
 Schoen v. Gulledge,
 
 481 So.2d 1094 (Ala.1985), this Court concluded that the loan officer had a duty to recommend only sound loans. The loan officer in
 
 Schoen
 
 held a one-half interest in the property Schoen wanted to purchase and allegedly purposely misstated Schoen’s cash flow so that he would qualify for the loan. Schoen was unable to pay the first installment of his loan.
 
 Schoen,
 
 481 So.2d at 1096. Thus, there was not just a risk that Schoen could not repay the loan; it was virtually certain that he could not. In this case, the evidence, if any, indicating that Coleman or Lawson purposely misstated the Jays’ potential for success or that it was a near certainty that they could not repay their loan is not substantial. In fact, the Jays ran their business, with varying degrees of success, for nearly 10 years.
 

 In
 
 Patrick v. Union State Bank,
 
 681 So.2d 1364 (Ala.1996), the other case the Jays cite, this Court held that a bank owed a customer a duty of due care in applying its procedures in opening cheeking accounts. In
 
 Patrick,
 
 an imposter opened a checking account in Patrick’s name after the bank failed to follow its identification procedures and safeguards in opening the account. The imposter wrote several bad checks, causing arrest warrants to be issued for Patrick in 11 jurisdictions. In imposing a duty on the bank, this Court stated that the bank was in the best position to prevent the fraud that injured Patrick, that the nature of the harm — arrest for writing bad checks — was foreseeable, and that it was commercially reasonable for the bank to take steps to prevent the fraud.
 
 Patrick,
 
 681 So.2d at 1369-71. In this case, however, the Jays ran the day-to-day operations of their business; thus, they were in the best position to ensure its success. The failure of the business was at least equally foreseeable to the Jays as it was to Peoples Bank, Lawson, or Coleman. Moreover, unlike the identification procedures and other safeguards in place to prevent the fraud that would harm the bank customer at issue in
 
 Patrick,
 
 this Court has held that a bank’s loan-approval
 
 *1195
 
 policies are intended solely for the bank’s benefit.
 

 “We conclude that the record supplies no basis for a holding that AmSouth owed ABS a common-law duty that could support its claims of negligence or wantonness based on its loan-application policies. Unlike the policies employed by the defendants in
 
 Lance[, Inc. v. Ramanauskas,
 
 731 So.2d 1204 (Ala.1999) ],
 
 Collins [v. Wilkerson,
 
 679 So.2d 1100 (Ala.Civ.App.1996) ], and
 
 [Wal-Mart Stores, Inc. v.] Tuck,
 
 [671 So.2d 101 (Ala.Civ.App.1995) ], all of which were policies intended to provide for public safety, the AmSouth policy that ABS references was solely for Am-South’s benefit.
 
 See Spriggs v. Compass Bank,
 
 742 So.2d 178 (Ala.Civ.App.1997) (holding that a bank’s internal policy of notifying mortgagors of the cancellation of their property insurance was for the bank’s benefit and did not imply a duty to the mortgagors).”
 

 Armstrong Bus. Servs., Inc. v. AmSouth Bank,
 
 817 So.2d 665, 681 (Ala.2001). Therefore, we hold that the Peoples Bank defendants do not owe the Jays a duty that would give rise to the Jays’ negligence claim. To answer the trial court’s question, the Peoples Bank defendants cannot “be liable to [the Jays] for negligence ... on the theory that the Bank loaned [the Jays] money for use in their business when both the Bank and [the Jays] appreciated that there was a substantial risk that revenues from the business would not be sufficient to repay the loans.”
 

 The Peoples Bank defendants also cite the above-quoted language in
 
 Armstrong
 
 to support their allegation that the trial court should have entered a summary judgment for them on the Jays’ wantonness claim. In response, the Jays merely quote the statutory definition of wantonness found at § 6-11-20(b)(3), Ala.Code 1975,
 
 [3]
 
 and say that “[g]iven the clear conflict of interest, a jury could find that the defendants’ actions constitute wantonness.” Jays’ reply brief, p. 36. Their argument thus consists of nothing more than an undelineated general legal proposition and does not meet the requirements of Rule 28, Ala.R.App. P. Such an argument is insufficient to invoke this Court’s review.
 
 See Jimmy Day Plumbing & Heating, Inc. v. Smith,
 
 964 So.2d 1 (Ala.2007) (holding that an appellant’s argument citing a single case for a general proposition of law failed to comply with Rule 28, Ala. R.App. P.). Because the Jays have not presented substantial evidence either of a negligence claim or of a wantonness claim against the Peoples Bank defendants, we reverse the trial court’s order denying a summary judgment on this claim and direct the trial court to enter a summary judgment for the Peoples Bank defendants on this claim.
 

 The Jays allege that the trial court erred in entering a summary judgment in favor of Alabama Catfish on the Jays’ negligence and/or wantonness claim. The Jays allege that “by virtue of their business relationship, the affirmative representations of George Smelley, and the involvement of the banking officers in the [Jays’] business, Alabama Catfish owed a duty of care to the [Jays] to act reasonably and to exercise reasonable care to avoid injury or damage to the [Jays].” Jays’ brief, p. 76. The Jays then allege that Alabama Catfish breached this duty of care. The Jays do not cite any authority or make any additional argument in their principal brief with respect to this allegation. It is not the duty of this Court to make arguments or perform the legal research to supple
 
 *1196
 
 ment an inadequate brief.
 
 Dykes v. Lane Trucking, Inc.,
 
 652 So.2d 248, 251 (Ala.1994) (“We have unequivocally stated that it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.”);
 
 Harper v. Coats,
 
 988 So.2d 501, 508 (Ala.2008). Therefore, the Jays’ argument is not properly before this Court, and we affirm the summary judgment for Alabama Catfish on this claim.
 

 V.Negligent and/or Wanton Supervision
 

 The Jays allege that the trial court erred in entering a summary judgment in favor of Alabama Catfish on the Jays’ negligent- and/or wanton-supervision claim. In their cross-appeal, Peoples Bank and its directors allege that the trial court erred in denying their motion for a summary judgment on the Jays’ negligent- and/or wanton-supervision claim. Peoples Bank and its directors allege that the claim is dependent on proving that one of Peoples Bank’s employees committed an underlying wrong. “[A] party alleging negligent supervision and hiring must prove the underlying wrongful conduct of the defendant’s agents.”
 
 University Fed. Credit Union v. Gruyson,
 
 878 So.2d 280, 291 (Ala.2003) (citing
 
 Voyager Ins. Cos. v. Whitson, 867
 
 So.2d 1065, 1073 (Ala.2003), citing in turn
 
 Stevenson v. Precision Standard, Inc.,
 
 762 So.2d 820 (Ala.1999)). Because we hold that the Jays’ claims alleging wrongful conduct on the part of any employees or officers of Peoples Bank or Alabama Catfish were properly dismissed on summary judgment, their negligent- and/or wanton-supervision claim is without merit. Therefore, we affirm the summary judgment in favor of Alabama Catfish on this claim, and we reverse the trial court’s order denying a summary judgment for Peoples Bank and its directors on this claim and direct the trial court to enter a summary judgment in favor of Peoples Bank and its directors on this claim.
 

 VI.Conspiracy
 

 “[Ljiability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy.
 
 Allied Supply Co. v. Brown,
 
 585 So.2d 33 (Ala.1991);
 
 Webb v. Renfrow,
 
 453 So.2d 724 (Ala.1984).”
 
 Jones v. BP Oil Co.,
 
 632 So.2d 435, 439 (Ala.1993). Because the underlying claims against the Peoples Bank defendants and Alabama Catfish are properly disposed of on summary judgment, so is the conspiracy claim. Therefore, we affirm the summary judgment in favor of the Peoples Bank defendants and Alabama Catfish on this claim.
 

 VII.Loss of Consortium
 

 A loss-of-consortium claim is derivative of the claims of the injured spouse. Therefore, Renee’s loss-of-consortium claim must fail if Charles Jay’s claims fail.
 
 See Ex parte Progress Rail Servs. Corp.,
 
 869 So.2d 459, 462 (Ala.2003) (“Even if the claims alleging loss of consortium and loss of services could otherwise be legally cognizable, they are derivative of, and dependent upon the outcome of, the direct claim .... ”). Because all the underlying claims against the Peoples Bank defendants and Alabama Catfish are properly disposed of on summary judgment, summary judgment is also proper on Renee’s loss-of-consortium claim. Therefore, we affirm the summary judgment in favor of the Peoples Bank defendants and Alabama Catfish on this claim.
 

 Conclusion
 

 For the foregoing reasons, we affirm the summary judgment in favor of the Peoples Bank defendants on the Jays’ breach-of-fiduciary-duty, suppression, deceit, unjust-
 
 *1197
 
 enrichment, and conspiracy claims and on Renee’s loss-of-consortium claim. We affirm the summary judgment in favor of Alabama Catfish on all the Jays’ claims and on Renee’s claim against it. We reverse the trial court’s order denying the motion for a summary judgment in favor of the Peoples Bank defendants on the Jays’ negligence and/or wantonness and negligent- and/or wanton-supervision claims and direct the trial court to enter a summary judgment for them on' those claims.
 
 [4]
 

 1061833 — AFFIRMED.
 

 1070120 — REVERSED AND REMANDED.
 

 1070140 — AFFIRMED.
 

 COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
 

 [1]
 

 . The Jays make separate claims alleging suppression and deceit, but they present one argument in support of both claims, so we analyze those claims together.
 

 [2]
 

 . Although the Jays allege both suppression and deceit, they do not present any argument addressing deceit, apart from the disclosure argument in support of their suppression claim. Therefore, we do not address that claim.
 

 [3]
 

 . Wantonness is defined as “[cjonduct which is carried on with a reckless or conscious disregard of the rights or safety of others.” § 6-1 l-20(b)(3).
 

 [4]
 

 . The Peoples Bank defendants and Alabama Catfish argue that the Jays’ breach-of-fiduciary-duty, suppression, deceit, conspiracy, unjust-enrichment, and loss-of-consortium claims are barred by the statute of limitations. They point to testimony in Charles Jay’s deposition regarding alleged "coffee shop talk" as proof of his knowledge of Coleman's and Lawson's alleged conflict of interest given their roles as loan officers at Peoples Bank and as directors of Alabama Catfish, and they argue that "a party will be deemed to have ‘discovered’ a fraud as a matter of law upon the first of either the actual discovery of the fraud or when the party becomes privy to facts that would provoke inquiry in a reasonable person that, if followed up, would lead to the discovery of the fraud.”
 
 Dickinson v. Land Developers Constr. Co.,
 
 882 So.2d 291, 298 (Ala.2003). Therefore, they argue, the statutory limitations period has run against the Jays. Because we decide the case on other grounds, we need not address this issue.