[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 103 
Pearl Slay Tuck sued Wal-Mart Stores, Inc., seeking to recover compensatory and punitive damages for an injury she suffered in a fall that, she alleged, was caused by Wal-Mart's negligence. The jury returned a $40,000 verdict in favor of Tuck, and the court entered a judgment on that verdict. Wal-Mart appeals, contending: (1) that the trial court erred in instructing the jury on "affirmative creation of a hazard" when, according to Wal-Mart, there was no evidence to indicate that Wal-Mart had affirmatively created a hazard; and (2) that the trial court erred in denying its motions for a directed verdict and a judgment notwithstanding the verdict ("JNOV") because, it says, Tuck did not prove that Wal-Mart had notice that the shelf fencing was on the floor.
Tuck testified that at approximately 1:30 p.m. on February 8, 1992, while shopping with her husband at a Wal-Mart store in Cullman, Alabama, she stepped on something and fell.
Douglas Haygood, an assistant manager at Wal-Mart, testified that upon arriving at the area where the accident had occurred, he saw Tuck sitting on the floor; that she told him that she had "slipped on that thing in the floor"; that a piece of shelf fencing, approximately 12 to 14 inches in length, was on the floor near Tuck; and that he removed the fencing from the floor and took it to the stock room. Haygood speculated that someone had hit the fencing with a shopping cart, causing it to dislodge.
Haygood further testified that, pursuant to store safety policies, a store employee was required to sweep the aisles of the entire store three times a day; that a "safety sweep" had been conducted between 11:00 and 12:00 on the day of the accident; and that about an hour before the accident he had been in the area and had not noticed anything on the floor. He stated that store employees were supposed to regularly walk through the area where Tuck fell; and that the employees were trained to stop whatever they were doing and to remove any misplaced merchandise and/or potential safety hazards that they saw.
Haygood testified that, following the fall, he completed the required incident report to send to Wal-Mart's home office, but that he did not attempt to determine who witnessed the accident and made no effort to question employees about the shelving on the floor or when they last had walked through the aisle. Gary Martin, the general manager of the store, testified that Haygood contradicted Wal-Mart policy in failing to interview employees to determine who may have witnessed the accident or who may have been in the aisle prior to the accident.
Haygood further testified that shelf fencing was not needed for merchandise near the area of the fall and that it was against Wal-Mart's policy to place shelf fencing on shelves for merchandise that did not need it. Martin testified that Wal-Mart employees had a responsibility to ensure that shelf fencing remained on the shelves and not on the floor.
Deposition and trial testimony revealed that Tuck had had back problems before the *Page 104 
accident; however, Tuck testified that, as a result of the fall, she can no longer do the things that she formerly could, and, among other things, that she must now walk with a cane, that she cannot work, and that she is still under the care of a physician for pain management.
We first address whether the trial court erred in its instruction to the jury on the "affirmative creation of a hazard." Our supreme court in Maddox v. K-Mart Corp.,565 So.2d 14, 16 (Ala. 1990), summarized the applicable law in "slip and fall" cases:
 "[A] storekeeper is under a duty to exercise reasonable care to provide and maintain reasonably safe premises for the use of his customers. However, the storekeeper is not an 'insurer of the customer's safety,' and is liable for injury only if he 'negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition.' The plaintiffs must prove that the injury was proximately caused by the negligence of [the storekeeper] or one of its servants or employees. Actual or constructive notice of the presence of the substance must be proven before [the storekeeper] can be held responsible for the injury. Furthermore, the plaintiffs must prove (1) that the substance slipped upon had been on the floor a sufficient length of time to impute constructive notice to [the storekeeper]; or (2) that [the storekeeper] had actual notice that the substance was on the floor; or (3) that [the storekeeper] was delinquent in not discovering and removing the substance."
Although actual or constructive notice is required for recovery in a slip and fall case, our supreme court has recognized an exception, however, and we find that Tuck, in this instance, did not have to prove notice; the trial court properly instructed the jury on the "affirmative creation of a hazard."
In Dunklin v. Winn-Dixie of Montgomery, Inc., 595 So.2d 463,465 (Ala. 1992), our supreme court noted, " 'When the defendant or his employees have affirmatively created the dangerous condition, plaintiff need not introduce evidence that defendant had actual or constructive knowledge of the hazard. Under such circumstances, the courts presume notice.' " (Citation omitted.) In Dunklin, the Court found that although there was conflicting evidence concerning the source of water on the floor of the store, Dunklin presented substantial evidence that a Winn-Dixie employee had spilled the water that caused Dunklin's fall.
In Wal-Mart Stores, Inc. v. McClinton, 631 So.2d 232
(Ala. 1993), our supreme court affirmed the trial court's judgment in favor of the plaintiff. The Court, relying onDunklin, supra, stated, "Wal-Mart created the dangerous condition by allowing the gun cabinet, with its extended molding, to protrude into the aisle. Thus, notice of the hazardous condition is imputed to Wal-Mart . . . and McClinton need not introduce additional evidence of notice to make a prima facie case." McClinton, supra, at 234.
The Court in McClinton, supra, also found Mims v. Jack'sRestaurant, 565 So.2d 609 (Ala. 1990), analogous. In Mims, the Court reversed a summary judgment entered in favor of Jack's Restaurant even though the plaintiff, who fell over a loose part of the restaurant's threshold, failed to present evidence that Jack's knew or should have known that the threshold was loose. The Mims Court stated:
 "[I]n cases where the alleged defect is a part of the premises . . ., once a plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will go to the jury, regardless of whether the plaintiff makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident."
Id., at 610. "Unlike a spilled substance, a defective threshold or a cart or a display rack is a fixture that requires ordinary and reasonable maintenance in order to provide safe premises for the store's customers." Id., at 611 (emphasis added).
Haygood, the assistant manager, testified that the shelf fencing that he found on the floor following the fall was not needed in the area where Tuck fell and that it was against store policy to place shelf fencing where it *Page 105 
was not needed; he speculated that it had been knocked loose by a shopping cart. From these facts, the jury could have determined that Wal-Mart, in not following its own policies, created a hazard that caused Tuck's injury. Additionally, the jury heard other evidence that Haygood did not follow other Wal-Mart policies in completing the incident report. He did not question employees about the cause of the accident or whether any employee had witnessed the accident.
We next determine if the trial court erred in denying Wal-Mart's motions for a directed verdict and JNOV. Our supreme court has stated:
 "Upon review of a jury verdict, we presume that the verdict was correct. . . . We will not overturn a jury verdict unless the evidence against the verdict is so much more credible and convincing to the mind than the evidence supporting the verdict that it clearly indicates that the jury's verdict was wrong and unjust."
Campbell v. Burns, 512 So.2d 1341, 1343 (Ala. 1987) (citation omitted). The applicable standard of review in considering a trial court's denial of both a motion for directed verdict and a motion for JNOV is the "substantial evidence" rule, §12-21-12, Ala. Code 1975. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). The ultimate question as to either motion is whether the nonmovant has presented substantial evidence supporting each element of his cause of action or defense in order to withstand a movant's motion for a directed verdict or a JNOV. Carter v.Henderson, 598 So.2d 1350 (Ala. 1992). In reviewing directed verdict and JNOV motions, we must view all the evidence in a light most favorable to the nonmovant and consider such reasonable evidentiary inferences as the jury would be free to draw. Id., at 1353.
Further, "A strong presumption of correctness attaches to a jury verdict in Alabama, if the verdict passes the 'sufficiency test' presented by motions for directed verdict and JNOV. This presumption of correctness is further strengthened by a trial court's denial of a motion for new trial." City of Gulf Shoresv. Harbert Int'l, 608 So.2d 348, 356 (Ala. 1992) (citations omitted). We conclude that the trial court properly denied Wal-Mart's motions for a directed verdict and for a JNOV, or, in the alternative, a new trial.
AFFIRMED.
THIGPEN, MONROE, and CRAWLEY, JJ., concur.
ROBERTSON, P.J., concurs in the result.