YATES, Judge.
In July 1995, Gertrude White sued Liberty National Life Insurance Company, alleging two counts of fraudulent misrepresentation and fraudulent suppression of information in the sale of life insurance policies covering her brother, Joseph Cunningham. In January 1997, an amended complaint was filed, which added to the text of the existing two counts, and in September 1997, a second amended com *453 plaint was filed, which added Joseph Cunningham as a party plaintiff and added a third claim for fraud. A trial was held in April 1998. After all the evidence was presented, Liberty National moved for a judgment as a matter of law (“JML”) on all three counts; the court entered a JML for the defendant on counts one and three; the second count, fraudulent suppression, was submitted to the jury. The jury returned a verdict for White, awarding her $1,350 in compensatory damages and $200,000 in punitive damages. Liberty National moved for a JML, or, in the alternative, for a new trial or remittitur. Following a hearing on Liberty National’s motion, the court denied the JML and the request for a new trial, and ordered a remittitur of punitive damages from $200,000 to $150,000. Liberty National appealed the final judgment to the supreme court; the appeal was transferred to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
Liberty National argues: (1) that White did not carry her burden of proof and, therefore, that the court erred in not granting Liberty National a JML on the second fraud count; (2) that the compensatory- and punitive-damages awards were excessive; and (3) that the evidence did not support the jury’s verdict and Liberty National, therefore, is entitled to a new trial. White argues on cross appeal that Liberty National was not entitled to a JML on the third fraud count.
The record reveals the following pertinent facts: White began caring for her disabled brother, Joseph Cunningham, in 1989 and the two of them agreed that Cunningham should purchase a burial policy to cover any expenses incurred by White following his death. White met with a Liberty National insurance agent in April 1991 and purchased a $2,500 life insurance policy. Cunningham and White agreed that the premiums would be paid out of Cunningham’s Social Security benefits. Because Cunningham was illiterate, White transacted all of his business affairs, including completing the insurance application, which named Cunningham as the policyholder and White as the beneficiary. The $19.07 monthly premium was paid directly to the “home service” agent, who came to their residence to collect the payment each month and who provided a written receipt. These premiums were timely paid for approximately two years, until the agent stopped coming to collect the payments, in or around May 1993. White testified that she did not think about mailing in the payments after the agent had stopped coming to her home, although that option was available. White testified that she was visited by a Liberty National agent around July or August 1993 and that that agent told her that if she accepted a new policy she would not be delinquent in her payments and, further, that the new policy would provide the same coverage the previous policy had provided. She accepted that new policy (a $2,500 policy). In September 1993, White received an additional $1,000 policy by mail. When White inquired about this $1,000 policy, she was told that the company had given her this policy to compliment the existing $2,500 policy.
The evidence indicates that the two new policies, which, for reasons not apparent from the record, dated April 15, 1993, may have been issued without appropriate signatures or authorization from either White or Cunningham. The life insurance policy issued in 1991 and the two issued in 1993 provided a “graded death benefit,” i.e., a reduced death benefit for the first three years. The policy declaration reads: “If death occurs during the first 3 years that the policy is in force, and if death is due to an accident, as defined in this policy, the *454 death benefit will be the ultimate face amount.” The declaration further stated: “Reduced during first three years. During this time the death benefit is equal to the premiums paid increased by 10% per year.” Therefore, the full death benefits of $2,500 and $1,000 under the two new policies would not be payable until the fourth year of coverage, unless Cunningham had an “accidental death” earlier. White testified that she was not advised that she had the option of reinstating her old policy for a payment of $76.00, thereby providing the total $2,500 death benefit within less than a year. Rather, White received two new policies, with premiums of $20.19 and $8.82, respectively, which required a new three-year period, which, by the terms of the policies, were to commence May 1, 1993. The suppression of this information was the basis for White’s fraudulent-suppression claim and the basis for the jury’s compensatory- and punitive-damages awards.
Rule 50, Ala. R. Civ. P., as amended effective October 1, 1995, renamed the “motion for a directed verdict” and the “motion for a judgment notwithstanding the verdict” as a “motion for a judgment as a matter of law” and a “renewal of the motion for a judgment as a matter of law,” respectively. The standard of review for a motion for a judgment as a matter of law is the same as for a motion for a directed verdict and a motion for JNOV. See Montgomery Coca-Cola Bottling, Co., Ltd. v. Golson, 725 So.2d 996 (Ala.Civ.App.1998). Our supreme court has stated:
“When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Craiuford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). For actions filed after June 11, 1987, the nonmovant must present ‘substantial evidence’ in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmov-ant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries v. Pate, 678 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).
Delchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala.1999).
Based on our review of the evidence, we conclude that the court correctly submitted the fraudulent-suppression claim to the jury. The evidence created a genuine issue of material fact as to whether Liberty National had suppressed information regarding the reinstatement of the 1991 life insurance policy as compared to the reissuance of two new policies in 1993. Therefore, we affirm that portion of the trial court’s ruling.
As to Liberty National’s argument that the jury awarded excessive damages, we note that a jury’s verdict is presumed correct and will not be disturbed on appeal unless it is plainly and palpably erroneous or manifestly unjust. Crown Life Ins. Co. *455 v. Smith, 657 So.2d 821 (Ala.1994). “Further, ‘A strong presumption of correctness attaches to a jury verdict in Alabama, if the verdict passes the “sufficiency test” presented by motions for directed verdict and JNOV. This presumption of correctness is further strengthened by a trial court’s denial of a motion for new trial.’ ” Wal-Mart Stores, Inc. v. Tuck, 671 So.2d 101, 105 (Ala.Civ.App.1995), quoting City of Gulf Shores v. Harbert Int’l, 608 So.2d 348, 356 (Ala.1992) (citations omitted). “Because the jury returned a verdict for [the plaintiff], any disputed questions of fact must be resolved in [his] favor, and we must presume that the jury drew from the facts any reasonable inferences necessary to support its verdict.” Crown Life Ins. Co., supra, at 822. In reviewing a judgment based on a jury verdict, this court must review the record in a light most favorable to the appellee. Id.
We do not find the award of $1,350 in compensatory damages to be excessive. This amount appears to represent the approximate dollar amount of premiums paid by White from 1991 to 1996 for the three policies in dispute. We now turn to the issue of punitive damages.
In BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the United States Supreme Court established three guideposts that a court should use in reviewing a punitive-damages award for excessiveness: (1) the degree of reprehensibility of the defendant’s action; (2) the ratio between the punitive-damages award and the compensatory-damages award; and (3) a comparison of the punitive-damages award to the civil or criminal penalties that could be imposed for comparable misconduct. 517 U.S. at 575, 116 S.Ct. 1589. Our supreme court recognized in BMW of North America, Inc. v. Gore, 701 So.2d 507 (Ala.1997) (BMW II), that the three guideposts set out by the United States Supreme Court did not exclude a court’s consideration of factors the Alabama Supreme Court had previously prescribed for Alabama courts to consider, in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), and Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). In Hammond, our supreme court stated:
^ “The authority to disturb a jury verdict on the ground of excessive damages is one which should be exercised with great caution. However, a remittitur may be ordered in those cases where the court can clearly see that the verdict has been reached because of bias, passion, prejudice, corruption, or other improper motives. This Court is well aware that the trial court is in a better position to observe all the witnesses who testified and other incidents which are not reflected in the record.”
Id. at 1378. (Citations omitted.).
We note that the trial court held a hearing on Liberty National’s motion and specifically addressed the issue of excessiveness. The court issued an order, dated August 27,1998, which reads, in part:
“On August 19, 1998, the Court heard arguments of counsel in regard to the defendant’s motions for judgments as a matter of law, remittitur and new trial. The parties provided the Court with a transcript of the trial. The Court has carefully reviewed all of the submissions.
“The defendant contends that it should have a judgment as a matter of law because (1) the plaintiff failed to carry her burden of proof; (2) the verdict was against the great weight of the evidence and (3) the jury’s damages award was excessive. It argues, [in] the alternative, that the Court should grant a remittitur or, in the further alternative, that it should grant a new trial.
*456 “This case was tried and submitted to the jury on the issue of suppression. At the close of the plaintiffs case, the defendant moved for a judgment as a matter of law on the issues of misrepresentation, suppression and a claim on behalf of Joseph Cunningham. The plaintiff agreed that there was no evidence to support a finding of misrepresentation and the misrepresentation claim was dismissed. The Court also found that there was no evidence to support a claim by Joseph Cunningham, and that count was dismissed.
“The Court observed the parties and their attorneys during the trial of this case. Defendant’s contention that the plaintiffs’ verdict was contrary to the weight of the evidence and that the plaintiff did not sustain her burden of proof is due to be denied.
“In considering the issue of excessiveness this Court is bound by the standards announced in the cases of BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989). The Court will address the factors which the defendant addressed at the post-trial hearing.
“First, the defendant argues that the award of compensatory damages in the amount of $1,350 was excessive in that it was not supported by the evidence. The amount of the award itself is evidence of the attention given by the jury to the evidence and to the Court’s charge. The compensatory damages are not excessive.
“The Court has considered the degree of reprehensibility of the defendant’s conduct. The jury found from the evidence that Liberty National suppressed from the plaintiff information [which, if she had had it,] she would not have bought the 1993 policy. Liberty National is a sophisticated company with knowledgeable agents. On the other hand, the plaintiff is not sophisticated in business transactions. She was induced by the defendant’s suppression and purchased the policy. The Defendant’s conduct was reprehensible in its dealing with the plaintiff and warranted the imposition of punitive damages.
“There are no legislative fines or penalties that could be levied against Liberty National for the conduct complained of by the plaintiff that the court considers appropriate. The court has considered the ratio of punitive damages to compensatory damages, and does find the punitive damages to bear a reasonable relationship, given the facts in this case.
“After a review of the record of the trial, as well as the arguments presented at the August 19, 1998, hearing, the Court finds that the $200,000 punitive damages award should be reduced by $50,000. The Court hereby orders re-mittitur of the punitive damages award from $200,000 to $150,000. The compensatory damages award will remain at $1,350.”
The evidence considered by the jury supported a finding that Liberty National had purposely suppressed information from White, with the intent to deceive her in the purchase of a new policy. This misconduct by Liberty National was reprehensible and warranted the imposition of punitive damages. The court, in reducing the punitive damages from $200,000 to $150,000, specifically considered the defendant’s reprehensible conduct, the damages ratio, and the imposition of civil or criminal penalties, or the lack of such penalties. Based on the extensive findings of the trial court, we conclude that the court correctly *457 considered the guideposts of BMW and the other factors articulated in Hammond and Green Oil Co. Therefore, we see no error in regard to the trial court’s award of damages.
As to White’s cross appeal, we conclude that the trial court did not err in entering a JML for Liberty National on count three, Cunningham’s claim of fraudulent inducement and suppression. It is clear that any suppression involved statements made between Liberty National and White. Further, there was no evidence to support a finding that any agent had directly conversed with Cunningham or had induced Cunningham to purchase the 1993 policy. The trial court properly entered the JML as to count three.
The judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and MONROE, J., concur.
CRAWLEY and THOMPSON, JJ., dissent.